UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DIANE BENNETT,

    Plaintiff,                                        CASE NO.:

v.

SYNCHRONY BANK,

    Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, DIANE BENNETT, by and through the undersigned counsel, and sues Defendant, SYNCHRONY BANK (hereinafter "SYNCHRONY"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like SYNCHRONY from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan. 3, 2017).

1

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015).

## **JURISDICTION AND VENUE**

6. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9. The alleged violations described herein occurred in Davidson County, Tennessee. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person, and citizen of the State of Tennessee, residing in Davidson County, Tennessee.

11. Plaintiff is an "alleged debtor".

12. Plaintiff is the "called party". See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. SYNCHRONY is a corporation with its principal place of business located at 170 West Electron Road, Suite 125, Draper, Utah 84020 and which conducts business in the State of Tennessee.

14. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (615) ***-2337, and was the called party and recipient of SYNCHRONY's calls.

15. Beginning in or about August 2016, SYNCHRONY began bombarding Plaintiff's cellular telephone (615) ***-2337 in an attempt to collect on a medical loan.

16. In or about August 2016, Plaintiff revoked her consent to be called by SYNCHRONY by requesting that the calls stop. Specifically stating "My husband is

3

unemployed, and I can't afford to pay the bills. Please stop calling me." Each call SYNCHRONY made to Plaintiff's cell phone after said revocation was done so without the "expressed permission" of the Plaintiff and in violation of the TCPA.

17. Despite Plaintiff informing SYNCHRONY to stop calling SYNCHRONY's autodialer calls to Plaintiff's cellular phone continued after August 2016. Between October 2016 and December 2016, Plaintiff made a non-exclusive log of ninety (90) calls she received from SYNCHRONY. Due to the volume and time period over which she received automated calls, Plaintiff was not able to properly catalogue each and every call from SYNCHRONY; however, attached hereto as Exhibit A is a small sampling.

18. Plaintiff estimates approximately over one hundred (100) calls to her cell phone post-revocation.

19. The autodialer calls from SYNCHRONY came from telephone numbers including but not limited to (800) 292-7508 and when that number is called a pre-recorded voice or agent answers and identifies the number as belonging to SYNCHRONY.

20. SYNCHRONY knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone number up to three (3) times a day from approximately August 2016 through January 2017, with such frequency as can reasonably be expected to harass, all in an effort related to collection of the subject account.

4

21. SYNCHRONY called Plaintiff over one hundred (100) times since revocation in August 2016, in an attempt to collect a debt.

22. Upon information and belief, some or all of the calls SYNCHRONY made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line and/or she received prerecorded messages from SYNCHRONY.

23. SYNCHRONY has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

24. SYNCHRONY has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or SYNCHRONY, to remove the number.

25. SYNCHRONY's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to SYNCHRONY they do not wish to be called.

26. SYNCHRONY has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

27. SYNCHRONY has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

28. SYNCHRONY has had numerous complaints against it from consumers across the country asking to not be called; however, SYNCHRONY continues to call these individuals.

29. SYNCHRONY's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from SYNCHRONY's call list.

30. SYNCHRONY has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

31. Not one of SYNCHRONY's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

32. SYNCHRONY willfully and/or knowingly violated the TCPA with respect to Plaintiff.

33. From each and every call placed without express consent by SYNCHRONY to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

34. From each and every call without express consent placed by SYNCHRONY to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone

unavailable for legitimate callers or outgoing calls while the phone was ringing from SYNCHRONY call.

35. From each and every call placed without express consent by SYNCHRONY to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

36. Each and every call placed without express consent by SYNCHRONY to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

37. Each and every call placed without express consent by SYNCHRONY to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

38. Each and every call placed without express consent by SYNCHRONY to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

39. Each and every call placed without express consent by SYNCHRONY to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

40. As a result of the answered and unanswered calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, embarrassment, distress and aggravation. Plaintiff is caring for her sick mother and husband while working full-time. The phone calls caused significantly more stress while the Plaintiff was dealing with these issues. SYNCHRONY called Plaintiff numerous times while at work. As a result, Plaintiff suffered embarrassment, and the phone calls affected Plaintiff's ability to fully perform her duties at work. Due to both answered and unanswered calls, Plaintiff suffered the expenditure of Plaintiff's time, exhaustion of Plaintiff's cellular telephone battery, unavailability of Plaintiff's cellular telephone while ringing, waste of Plaintiff's time, causing risk of personal injury due to distraction and trespass upon Plaintiff's chattels. All of the abovementioned were caused by, and/or directly related to, SYNCHRONY's attempts to collect a debt from the Plaintiff through the use of automated/predictive dialing technology.

## COUNT I
## (Violation of the TCPA)

41. Plaintiff fully incorporates and realleges paragraphs one (1) through forty (40) as if fully set forth herein.

42. SYNCHRONY willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified SYNCHRONY that Plaintiff wished for the calls to stop

43. SYNCHRONY repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, DIANE BENNETT, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, SYNCHRONY BANK, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/Mark Lambert*
Mark Lambert, Esquire
BPR #: 22509
Morgan & Morgan
1 Commerce Square, 26th Floor
Memphis, TN 38103
T: (901) 217-7000
F: (901) 333-1897
MLambert@forthepeople.com
Counsel for Plaintiff